[No. C064277. Third Dist. Sept. 24, 2013.]

SACRAMENTO SIKH SOCIETY BRADSHAW TEMPLE, Plaintiff and Respondent, v.
SATNAM SINGH TATLA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, III, IV, V, and VI of the Discussion.

## Counsel

Downey Brand, Janlynn R. Fleener, Ramaah Sadasivam, Kevin McKinley and Katie Konz for Defendants and Appellants.

Donahue Blakemore & Mackey, Stephen J. Mackey; and Christopher A. Lee for Plaintiff and Respondent.

## Opinion

**HULL, J.**—Several founding members of the Sacramento Sikh Society (the Society), a nonprofit religious corporation, donated to the Society a parcel of real property in Elk Grove. The Society later obtained a second, adjacent parcel on which it erected a temple. Sometime later, other individuals took control of the Society from the founders through the election process.

The founders and others took various steps to gain control of the Society's real property, including recording two transfer deeds purportedly from the Society to some of them. When the Society learned of this conduct, it initiated this action for slander of title against those purportedly responsible, to wit, defendants Satnam Tatla, Vichitra Sandhu, Kehar Singh, Kamal Gill, Gian Gill, Harinder Singh, Hakam Singh, Avtar Dosanjh, Sarban Singh, Mohinder Dosanjh, Manjit Dosanjh (the named defendants). Some of the named defendants in turn filed a cross-complaint against the Society and those who were running it.

Resolution of this dispute turned in part on whether bylaws adopted for the Society in 1996 superseded those adopted earlier. The named defendants claimed they remained in control of the Society by virtue of the earlier bylaws and, therefore, retained the power to transfer the two parcels. In a bench trial, the court concluded otherwise and nullified the two transfer deeds. The court also rejected the named defendants' claim that they are "life members" of the Society and, because they otherwise failed to maintain membership in the Society, the court concluded the named defendants have no standing to pursue their cross-complaint. In a subsequent proceeding, a jury found against all of the named defendants except Gian Gill and Manjit Dosanjh on the Society's claim for slander of title and awarded both consequential and punitive damages.

Satnam Tatla, Vichitra Sandhu, Kehar Singh, Kamal Gill, Gian Gill, Harinder Singh, Hakam Singh and Avtar Dosanjh (hereafter collectively defendants) appeal, challenging the judgment and each of the foregoing determinations. They contend the trial court erred in concluding the 1996

bylaws were properly adopted, setting aside the two grant deeds, and finding that they lack standing to pursue their cross-complaint. They also contend there is insufficient evidence to support the jury's verdict on the slander of title claim, the jury was not properly instructed on the punitive damages issue, and there is insufficient evidence to support the punitive damages award.

We reject each of defendants' contentions and affirm the judgment.

### FACTS AND PROCEEDINGS

Because defendants raise various challenges to the sufficiency of the evidence, we recount the evidence in the light most favorable to the judgment below. (*Bunch v. Hoffinger Industries, Inc.* (2004) 123 Cal.App.4th 1278, 1303 [20 Cal.Rptr.3d 780].)

In October 1988, Kamal S. Gill, Vichitra Singh Sandhu, Kehar Singh Shonky and Avtar Singh Dosanjh filed articles of incorporation with the California Secretary of State for the Society, a nonprofit religious organization. In early 1989, a statement by domestic nonprofit corporation was filed for the Society, listing as officers Vichitra Sandhu (chief executive officer), Kehar Singh (secretary), and Avtar Dosanjh (chief financial officer). The principal office of the Society was listed as 5600 Lerner Way in Sacramento, which was a home owned by Vichitra Sandhu.

In December 1989, Kamal Gill, Avtar Dosanjh and Vichitra Sandhu donated to the Society a 13-acre parcel of property on Gerber Road in Elk Grove for the express purpose of building and maintaining a "Sikh Gurdwara" (temple) and associated facilities.

In October 1992, the board of directors of the Society adopted the first restated bylaws (the 1992 bylaws) to govern the Society. The 1992 bylaws provided that the Society would be governed by a board of directors, whose members would be elected by the "Voting Members." The 1992 bylaws established a maximum of 100 "Voting Members," all of whom must be approved by the board and who alone may be selected as directors. The board in turn would select the officers of the Society.

In 1993, the officers of the Society were Kamal Gill (chief executive officer), Makham Singh (secretary), and Avtar Dosanjh (chief financial officer).

The Society later discovered it could not build a temple on the 13-acre parcel. It purchased an adjacent 10-acre parcel fronting on Bradshaw Road

that contained an old house and garage. The official address of the Society was moved to this Bradshaw Road location. Because the Society could not obtain a loan for the purchase in its own name, the property was placed in the names of Kamal and Gian Gill, Jaswant and Mohinder Hundal, Mohinder and Manjit Dosanjh, and Vichitra Sandhu. After the mortgage was paid off, those individuals signed a grant deed transferring the property to the Society.

In 1995, a dispute arose over governance of the Society. On April 17, 1995, the Society, Makham Singh, Kamal Gill, Darshan Dhaliwal, Jaswant Hundal, and Amrik Kaile filed suit in Sacramento County Superior Court against Vichitra Sandhu, Avtar Dosanjh, Tara Ratenda, Ajit Randhawa, Pargan Bains, Rulda Shekhon, Ajit Grewal, Ranjit Singh, Balwant Virk, Gurbux Singh, Gurdee Singh, Sewa Singh, Pilem Mandi, and Sarwan Mathwalu for declaratory relief, an injunction and an accounting. The complaint alleged the plaintiffs were all member-directors of the Society or otherwise persons who had contributed time, money and/or personal property to the Society and the defendants "were or are purported member-directors of the Society and/or have taken control of the books, records, and assets of the Society . . . ." It further alleged the defendants had "improperly dealt with assets of the Society" in violation of the bylaws, had deprived the plaintiffs of access to the books, records, minutes, membership lists, and receipt books of the Society, and had improperly acted as officers and directors of the Society.

A receiver was appointed to run the Society during the pendency of this litigation. In 1996, at the behest of the Society's congregation, the "Council of Five," or "Punj Pyara," of the Society approached the parties to the litigation about settling the matter.

On July 10, 1996, in open court, the parties to the pending action entered into a stipulation for settlement. The settlement provided that "[a]ll of the matters that have been placed at issue as a result of this combined litigation shall be ultimately in the domain and be resolved by the [Punj Pyara] selected by the congregation of the [Society]." The settlement also created two advisory committees: an audit committee and a bylaws committee. The audit committee was tasked with investigating alleged financial irregularities within the Society and reporting to the congregation. The function of the bylaws committee was "to make recommendations relating to what type of guidelines would be appropriate and what type of language, if this temple ultimately modifies its by-laws, would be appropriate in those by-laws." The settlement further provided that any recommendations of the bylaws committee "may or may not be dealt with directly by the [Punj Pyara]."

Not all parties to the litigation were present in court the day the settlement agreement was announced. The agreement provided that counsel for the

parties would undertake to obtain signatures on the settlement agreement for those not present and the court would retain jurisdiction to effectuate the settlement. However, signatures were not obtained from all the parties to the litigation. Nevertheless, on September 5, 1996, the trial court dismissed the action.

New bylaws for the Society were prepared pursuant to the settlement agreement (the 1996 bylaws) and were approved by the Punj Pyara. They were thereafter adopted at a meeting of the congregation by a show of hands.

Several of the defendants in the present matter, some of whom had been involved in the Society since its inception, ceased attending services at the Society's Bradshaw Road location after resolution of the 1995 through 1996 litigation. One defendant, Satnam Tatla, who lived more than 40 miles away from the Bradshaw Road facility, discontinued attendance even before the lawsuit was filed.

A 15-member board of directors was elected by the Society pursuant to the 1996 bylaws. Another board election was held in 1999 to 2000, also pursuant to the 1996 bylaws.

Construction of a temple on the Bradshaw Road property was completed in 1999.

In 2002, a new dispute arose over failure of the Society to hold a board election. Suit was filed based on the election provisions of the 1996 bylaws and the court ordered an election for June 2002. However, because of violence that erupted over eligibility to vote, the election did not occur as scheduled. The court ordered a new registration period for membership between November and December 2002 and a new election for January 5, 2003. All those who signed up to vote agreed to be bound by the 1996 bylaws.

Two of the named defendants, Hakam Singh and Mohinder Dosanjh, were on the ballot for the January 2003 election. All of the named defendants except Tatla and Avtar Dosanjh signed up to vote and voted in the election.

Neither Hakam Singh nor Mohinder Dosanjh was elected to the Society's board of directors.

After the 2003 election, the original defendants began meeting at the Lerner Way address to devise a scheme for reclaiming the two parcels of real property held by the Society. Around this same time, they allegedly discovered a letter purportedly written in 1997 by Morey Fuqua, attorney for the

defendants in the 1995 through 1996 litigation. In that letter, Fuqua opined the 1996 bylaws were of no legal effect because the 1996 settlement agreement was never fully executed. Fuqua indicated a "tentative" settlement was reached in open court that was later signed by all the defendants but not all the plaintiffs. According to Fuqua: "Because the tentative Settlement Agreement negotiated in open court was never signed by the plaintiffs, the Court, on September 5, 1996, dismissed the litigation." Fuqua opined that this dismissal placed the Society back in the same position it had been in before the lawsuit was filed, i.e., under the governance of the 1992 bylaws. And, since the 1996 bylaws were not adopted pursuant to the terms of the 1992 bylaws, they never came into legal effect.

The named defendants declared themselves to be the true representatives of the Society and elected Tatla to serve as their president. Tatla, acting as president of the Society, later signed grant deeds transferring ownership of one of the parcels to Vichitra Sandhu, Kamal Gill, Gian Gill, Mohinder Dosanjh and Manjit Dosanjh, and the other parcel to Vichitra Sandhu, Kamal Gill and Avtar Dosanjh. Tatla gave the grant deeds to Hakam Singh, who filed them in the county recorder's office.

The named defendants then hired Attorney Richard Corbin to file a quiet title action on the two parcels. Suit was filed, naming as the sole defendant Bhagat Singh, who was purportedly residing on the premises at the time. A default judgment was eventually obtained against Singh.

Thereafter, the named defendants sent letters to the IRS and the Franchise Tax Board claiming to be in charge of the Society. In 2004, the Society received notice that SMUD (Sacramento Municipal Utility District) was about to turn off power at the Bradshaw Road facility. They investigated and discovered a document in the county building department dated May 10, 2004, asserting that there had been unauthorized construction on the Bradshaw Road site. The letter was signed by Vichitra Sandhu and claimed the property was owned by those to whom it had purportedly been transferred by Tatla. Around this same time, the Society also discovered the two deeds executed by Tatla.

The foregoing actions of the named defendants placed a cloud on the title of the two Society parcels and delayed efforts by the Society to construct a new temple. The Society also incurred substantial legal fees in attempting to establish its title to the real property and had difficulty raising funds for the construction project.

On June 17, 2004, the Society filed suit against the named defendants for slander of title. In November, all the named defendants except Sarban Singh

and Hakam Singh, filed a cross-complaint against the Society, Balwant Virk, Amrik Kaile, Kashmira Atwal, Amarjit Bassi, and Surinder Dhadda for breach of fiduciary duty, breach of the covenant of quiet enjoyment, declaratory relief, accounting and conversion.

The trial court bifurcated the issues for trial. Following a bench trial, the court concluded the settlement agreement reached in the 1995 through 1996 litigation was effective and the 1996 bylaws, adopted pursuant to that agreement, governed the Society thereafter. Consequently, the election that occurred in January 2003 pursuant to the 1996 bylaws was valid and the named defendants had no authority to transfer ownership of the two parcels. The court therefore nullified the 2004 grant deeds executed by Tatla. The court also rejected the named defendants' claim that they are life members of the Society and, therefore, concluded they have no standing to pursue their cross-complaint.

In a subsequent proceeding, a jury found against all of the named defendants except Manjit Dosanjh and Gian Gill on the Society's claim for slander of title. The jury concluded those defendants acted with malice in their dealings with the Society's property and awarded damages in the amount of $359,021.22. The jury also awarded punitive damages in various amounts from $60,000 to $167,500 against each of those defendants.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

#### *Standing*

Defendants contend the trial court erred in concluding they lack standing to pursue their cross-complaint. That cross-complaint contains a claim for declaratory relief in which defendants, as cross-complainants, contend the cross-defendants have improperly assumed control of the Society and its assets and have attempted to adopt new bylaws in derogation of the 1992 bylaws. The cross-complaint also contains a claim that the cross-defendants have breached their fiduciary duty by taking control of the Society, a claim for an accounting of Society funds allegedly misappropriated by the cross-defendants, a claim for breach of the covenant of quiet enjoyment of the Society's real property, and a claim for conversion of the Society's assets.

---

*See footnote, *ante*, page 1224.

It is undisputed that defendants failed to maintain membership in the Society within the terms of the 1996 bylaws. Defendants claim they were life members by virtue of having contributed property and services to the Society and being its founders. The trial court concluded defendants failed to prove they are life members of the Society. Hence, according to the court, defendants lack standing to assert claims against the cross-defendants on behalf of the Society.

Defendants contend on appeal that, by so ruling, the trial court crossed the line between resolving property disputes and resolving ecclesiastical issues reserved to the church under the First Amendment to the United States Constitution. According to defendants, the question of who is and who is not a member of a religious organization impacts matters of religious freedom and is reserved to the organization itself. Defendants argue the determination of their membership status with the Society "was based on the informal traditions, customs, and practices of the organization," which is "precisely the sort of sectarian dispute over membership that the courts of this State are precluded from deciding."

In *Episcopal Church Cases* (2009) 45 Cal.4th 467 [87 Cal.Rptr.3d 275, 198 P.3d 66], the California Supreme Court described the following principles for adjudicating disputes within a religious organization: "The high court has approved two methods for adjudicating church property disputes. The first approach is one the court itself adopted in the 19th century. (*Watson v. Jones* [(1871)] 80 U.S. 679 [20 L.Ed. 666].) This approach is often called the 'principle of government' approach. [Citation.] The *Watson v. Jones* court distinguished between two types of church disputes. One 'has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself . . . ; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.' [Citation.] 'In such cases,' the court explained, 'where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations.' [Citation.] Another type, which the court said 'is the one which is oftenest found in the courts,' involves a hierarchical structure, i.e., a 'religious congregation which is itself part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government.' [Citation.] In the latter case, the court said, 'we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments.' [Citation.]" (*Episcopal Church Cases, supra,* at p. 480, fn. omitted.)

In *Korean United Presbyterian Church v. Presbytery of the Pacific* (1991) 230 Cal.App.3d 480 [281 Cal.Rptr. 396] (*Korean United*), disapproved on other grounds in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143] and footnote 11, Reverend Woo persuaded a majority of the local church that they should leave the denomination and the higher authority of the denomination responded by appointing new leaders for the local church. This higher authority then determined that the minority of the local church, represented by the denomination's self-appointed leaders, represented the true church and was entitled to control the local church's property. (*Korean United*, at pp. 487, 494.) The trial court entered judgment for Reverend Woo and the majority, thereby giving them control of the property.

The Court of Appeal reversed. Among other things, the appellate court concluded the trial court's decision violated the First Amendment by substituting the court's judgment for that of the church hierarchy regarding the identity of the local church. According to the court, the question of which group is the "true" church is " 'clearly ecclesiastical' " and, therefore, the ecclesiastical authorities' determination on the issue is controlling. (*Korean United, supra*, 230 Cal.App.3d at p. 501; see *id.* at pp. 500–503; accord, *Metropolitan Philip v. Steiger* (2000) 82 Cal.App.4th 923, 930–931 [98 Cal.Rptr.2d 605].)

 The present matter does not involve a church hierarchical structure and a dispute between the local authorities and a higher authority. It instead involves the first situation identified in *Episcopal Church Cases*—a dispute among factions in an independent organization. There is nothing in this record to suggest the Society is part of some larger organization. The dispute must therefore be determined by " 'the ordinary principles which govern voluntary associations.' " (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 480.) In other words, the dispute must be resolved without reference to ecclesiastical principles. If this cannot be done, the issue is not properly before the courts.

Defendants contend issues of membership are strictly within the purview of church authorities. They cite as support *New v. Kroeger* (2008) 167 Cal.App.4th 800, 815 [84 Cal.Rptr.3d 464], where the court said: "The prohibition against civil court participation in sectarian disputes extends to issues involving membership, clergy credentials and discipline, as well as religious entity governance and administration." They also cite *Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 437 [93 Cal.Rptr.3d 75], where the court asserted " 'ecclesiastical matters include not only issues of religious doctrine per se, but also issues of membership, clergy credentials and discipline, and church polity and administration.' "

The fact that issues of church membership may fall within the purview of church authorities does not mean that is always the case. The question is whether resolution of the membership issue requires reference to church doctrine rather than neutral legal principles. In *New v. Kroeger*, despite indicating issues of membership fall outside the scope of court authority, the court went on to rule that certain parties who had resigned their membership in the church were no longer empowered to act on behalf of the church. (*New v. Kroeger, supra*, 167 Cal.App.4th at p. 822.) In effect, the court ruled that the individuals in question were no longer members because they had resigned. That ruling was based on basic legal principles rather than church doctrine.

In the present matter, the issue presented to the trial court was whether defendants were life members of the Society. They assert their membership status "was based on the informal traditions, customs, and practices of the [Society]."

We disagree. There was no evidence presented at trial that life membership was a status conferred on members of the congregation due to ecclesiastical matters. Rather, defendants' claim of life membership was simply one of fact based on evidence as to whether the Society as a whole recognized that status and, if so, whether it had been conferred on defendants. This was no more an ecclesiastical matter than the question whether certain parties in *New v. Kroeger* had resigned their membership. A trial court is well equipped to resolve such factual disputes.

■ Although there was evidence presented by defendants by way of their own testimony that they had been made life members, there was no evidence the Society even recognized such status. Neither the 1992 bylaws nor any other governing document contained any provision for life membership. Defendants could provide no documentation to that effect. Thus, based on the evidence as a whole, the trial court's determination that defendants failed to prove they were life members is supported by substantial evidence.

Defendants nevertheless contend they have standing to pursue their cross-complaint because, as voting members and directors of the Society under the 1992 bylaws, they have a beneficial interest in the outcome of the claims. However, to the extent the claims in the cross-complaint are premised on the continued validity of the 1992 bylaws, those claims are without merit and any error by the trial court in finding a lack of standing was harmless. As for any other claims in the cross-complaint, these were claims on behalf of the Society. Since defendants are not members of the Society, they have no standing to pursue such claims.

Finally, defendants contend they have standing under Corporations Code section 9418 to pursue claims relating to the validity of the 2003 election. Subdivision (a) of that section reads: "Upon the filing of an action therefor by any director or member, or by any person who had the right to vote in the election at issue after such director, member, or person has exhausted any remedies provided in the articles or bylaws, the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation." Defendants again contend that, because the 1996 bylaws were invalid, the 1992 bylaws control and, under those bylaws, they are directors and voting members of the Society. However, as previously explained, because defendants are wrong about the continued validity of the 1992 bylaws, their claim of director and voting member status is without merit. And although at least some of defendants signed up for membership in 2003 and participated in the January 2003 vote, that 2003 membership lapsed before this case was filed.

### III–VI[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. The Society is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Nicholson, Acting P. J., and Robie, J., concurred.

A petition for a rehearing was denied October 21, 2013.

---

[*]See footnote, *ante,* page 1224.